# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

HOLDING COMPANY OF THE
VILLAGES, INC.,

                              **Plaintiff,**

-vs-                                              **Case No.  5:11-cv-631-Oc-37TBS**

POWER CORPORATION,

                              **Defendant.**
_____/

## ORDER

This cause comes before the Court on Plaintiff's Motion for Temporary Injunction (Doc. No. 4), filed on November 22, 2011, and Motion to Strike Affidavits (Doc. No. 24), filed on December 15, 2011. Having heard oral arguments on December 16, 2011 and having reviewed the relevant legal authority and the submitted filings, the Court issues the following ruling.

## BACKGROUND OF THE CASE[1]

This is an action alleging trademark infringement, trademark dilution, false advertising and unfair competition under federal, state, and common law. Allegedly, Defendant is operating a competing real estate development business under a service mark that violates Plaintiff's valuable intellectual property rights. More specifically, Defendant's usage of "Villages of Lakeside Landings"

---

[1] The Court relies on the facts and arguments submitted in Plaintiff's Motion for Preliminary Injunction (Doc. No. 4) and Defendant's Response (Doc. No. 13).

in connection with the sale of real estate is alleged to violate Plaintiff's prior rights in its federally registered mark "The Villages."

Plaintiff asserts that it promotes and sells its residential real estate under the mark "The Villages" throughout the United States and internationally since at least as early as July 1992. Since adopting its mark and the name "The Villages," Plaintiff submits that it has spent significant money to advertise and promote "The Villages" mark and name, and has achieved significant commercial success throughout the United States and internationally. (*See generally* Doc. No. 1.) Furthermore, Plaintiff contends, its mark, through its widespread and long-term use, has acquired distinctiveness and has achieved secondary meaning in consumers' minds, and has become a famous mark. (*Id.* at 6.) As a result, Plaintiff's registration no. 2,614,700 for "The Villages" has acquired an incontestable status pursuant to 15 U.S.C. § 1065.

On or about June 2004, Defendant was in the process of developing its residential community located in Sumter County, Florida. Plaintiff bought property adjacent to Defendant approximately two years after Defendant started its development. Plaintiff received a letter dated June 25, 2004 from an attorney for Defendant inquiring whether Plaintiff had any objections to Defendant's use of "The Villages" as part of Defendant's proposed trademark for its residential development. Plaintiff voiced its objections in the response letter dated July 8, 2004. Despite Plaintiff's stated objections, and subsequent to Plaintiff's use and federal registration of "The Villages" mark and name, Defendant began using the mark and name "Lakeside Landings at The Villages" in connection with the sale of real estate in its residential community. Attorneys for Plaintiff demanded that Defendant cease its infringing use of the mark and name "The Villages" by a letter dated September 9, 2005. Only after the demands by the Plaintiff did Defendant cease its alleged unlawful use of the mark and name

-2-

"Lakeside Landings at The Villages" by re-naming its community to "Lakeside Landings." However, in an effort to benefit from the goodwill generated from Plaintiff's mark and name, argues Plaintiff, Defendant has changed its community signage, website and advertising to reflect its infringing mark and name, "Villages of Lakeside Landings."

On November 7, 2011, Plaintiff sent Defendant a letter demanding that the Defendant immediately cease all acts of alleged infringement and deceptive trade practices. Despite this demand, asserts Plaintiff, Defendant continues to willfully infringe upon Plaintiff's mark and name. Although Defendant disagrees with Plaintiff's views on preventing others from using the term "Villages," asserts Defendant, it made a good faith effort to avoid litigation by removing the letter "s" to make the word "Village" singular, rather than plural, when used in connection with the overall name "Village of Lakeside Landings." Additionally, Defendant displays a unique sailboat logo in connection with almost all of its uses of "Village of Lakeside Landings" in advertisements and signs. Against this backdrop follows the present action and Plaintiff's Motion for Preliminary Injunction.

## ANALYSIS[2]

1.   *Necessary Showing for Issuance of Preliminary Injunction*

To prevail on its request for injunctive relief, Plaintiff must demonstrate the following elements: (1) a substantial likelihood of success on the merits; (2) irreparable injury if the injunction is not issued; (3) the threatened injury to Plaintiff outweighs the potential damage that the proposed injunction may cause Defendants; and (4) the injunction, if issued, will not be adverse to public interest. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1240 (11th Cir. 2005); *McDonald's*

---

[2] Arguments not mentioned in this opinion are either mooted by the decisions made herein, or do not merit further discussion.

*Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998).   The issuance of an injunction is an extraordinary remedy, and the moving party "bears the burden to clearly establish the four prerequisites." *Schiavo*, 403 F.3d at 1306.  For the reasons set forth below, the Court concludes that Plaintiff has not carried its burden.[3]

The first and primary factor in determining whether a preliminary injunction should issue is whether Plaintiff is likely to prevail on the merits of its claims.  *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1026 (11th Cir. 1989); *Glen Raven Mills, Inc. v. Ramada Int'l, Inc.*, 852 F. Supp. 1544, 1547 (M.D. Fla. 1994).[4]  To demonstrate a likelihood of success on the merits of Plaintiff's trademark action against Defendant pursuant to Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), Plaintiff must show: (1) validity of its mark; and (2) a likelihood of confusion as to the source of sponsorship of Defendant's products.  *McDonald's Corp.*, 147 F.3d at 1306.

2.    *Arguments of the Parties*

In its Motion for Preliminary Injunction, Plaintiff argues that Defendant is presently infringing upon Plaintiff's mark by Defendant's use of the name and mark "Villages of Lakeside Landings" for its residential development located in close proximity to Plaintiff's residential and commercial development.  (Doc. No. 4, p. 5.)  Plaintiff submits that its incontestable trademark under 15 U.S.C. § 1065 is valid as a matter of law.  (*Id.*); *see Marco's Franchising, LLC v. Marco's Italian Express,*

_____

[3] The findings of the Court in this Order are not controlling on later application for a permanent injunction or for the purposes of trial.  *See E. Remy Martin & Co. v. Shaw-Ross Int'l Imps.*, 756 F.2d 1525, 1528 n.1 (11th Cir. 1985).

[4] The principles of trademark infringement are the same under both common law and the Lanham Act, and the Court will not undertake a separate analysis for each claim.  *See Tally-Ho, Inc.*, 889 F.2d at 1025-26.

*Inc.*, 2007 WL 2028845, *4 (M.D. Fla. July 9, 2007) (internal quotation marks and citation omitted) ("To the extent that the right to use the registered mark has become incontestable under 15 U.S.C. § 1065, the registration shall be *conclusive* evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce.") (emphasis in original). The goods and services specified in the certificate for this registration are "residential retirement home real estate construction and development." (Doc. No. 4, p. 3.) Moreover, Plaintiff contends that Defendant's actions are likely to cause and have caused confusion, mistake or deception as to the origin, sponsorship, or approval of Defendant's services and the services offered by Defendant with regard to real estate and its "Villages of Lakeside Landings" trademark, and thus constitute false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). (*Id.* at 5.)

Furthermore, argues Plaintiff, due to the similarity between Defendant's mark "Villages of Lakeside Landings" and Plaintiff's mark "The Villages," Defendant's actions are likely to cause and have caused dilution of the distinctive quality and have harmed the reputation of Plaintiff's famous mark, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(c)(1). (*Id.*) Plaintiff finally asserts that as a result of Defendant's actions, Plaintiff has suffered, and unless Defendant's conduct is enjoined, it will continue to suffer irreparable harm for which Plaintiff has no adequate remedy at law. (*Id.*) Therefore, Plaintiff submits that it has a likelihood of success on the merits of this case.[5]

_____

[5] Although Plaintiff mentions all of its alleged claims in the Motion for Preliminary Injunction, in its analysis of substantial likelihood of success on the merits, Plaintiff submitted legal authority and evidence in support of its trademark infringement claim only . Therefore, the Court solely focuses on the infringement claim.

-5-

Defendant argues that Plaintiff is not entitled to the extraordinary remedy it seeks because it cannot establish the four required elements.  (Doc. No. 13, p. 7.)  Defendant notes that "[t]he status of 'incontestability only addresses the first part of the infringement analysis, that is, whether a mark is valid, entitled to protection, and owned by a plaintiff; incontestable status–somewhat of a misnomer–does not mean that a mark's strength cannot be attacked.' " (*Id.* at 9 (quoting *HBP, Inc. v. Am. Marine Holdings, Inc.*, 290 F. Supp. 2d 1320, 1329 (M.D. Fla. 2003).)  Thus, Defendant asserts, even if it concedes that Plaintiff's mark is valid, Plaintiff still failed to clearly establish the second element necessary to succeed on the merits–likelihood of confusion as to the source, affiliation or sponsorship of its services.  (*Id.*)  Finally, Defendant submits that Plaintiff's motion for preliminary injunction should be denied.  Because both parties mainly focus on the likelihood of confusion analysis, the Court will accordingly address those arguments.

3.      *Likelihood of Confusion*

The Court must consider seven factors in deciding whether there is a likelihood of confusion between Plaintiff's and Defendant's marks, including (1) the type of mark at issue; (2) the similarity of design; (3) the similarity of services; (4) any identity of purchasers and similarity of retail outlets; (5) similarity of advertising media; (6) Defendant's intent; and (7) actual confusion.  *Freedom Sav. & Loan Ass'n v. Way*, 757 F.2d 1176, 1182 (11th Cir. 1985) (internal citations omitted).  Of the seven factors relevant to determining the likelihood of customer confusion, the most important factors are the type of mark and any evidence of actual confusion.  *Frehling Enter., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999) (internal citation omitted).  Although evidence of actual confusion is an important factor, the law is well settled that evidence of actual confusion is not

necessary to a finding of likelihood of confusion. *E. Remy Martin & Co. v. Shaw-Ross Int'l Imports*, 756 F.2d 1525, 1529 (11th Cir. 1985).

a.     *Type of Mark*

The greatest range of protection is given to strong and distinctive marks, *i.e.*, those marks that present a greater likelihood that consumers will associate it and all similar marks with the owner. *Id.* "If a name is used by third parties other than the infringer, then it is less strongly protected than it would otherwise be." *Freedom Sav. & Loan Ass'n*, 757 F.2d at 1182 (citing *Sun Banks of Fla. v. Sun Federal Savs. & Loan Ass'n*, 651 F.2d 311 (5th Cir. 1981)[6]).  "The primary indicator of trademark strength measures the logical correlation between a name and a product.  If a seller of a product or service would naturally use a particular name, it is weakly protected." *Id.* (internal citation omitted). "Finally, if a mark is 'incontestable,' that is, if it has been registered for five years with the Patent & Trademark Office, its holder has filed the affidavit required by 15 U.S.C. § 1065(3) . . ., and the Patent & Trademark Office has accordingly declared the mark 'incontestable,' then the mark's incontestability serves to enhance its strength." *Frehling Enter., Inc.*, 192 F.3d at 1336 (internal citation omitted).

Defendant argues that the extensive third party use documented in this case demonstrates that "The Villages" is a weak mark.  (Doc. No. 13, pp. 12-15.)  Indeed, the evidence submitted by Defendant shows that the terms "Village" and "Villages" are widely used in Florida and throughout the United States both by businesses in the real estate industry and in other industries.  (*Id.* at 14 (submitting that there are 79 active trademark registrations for marks incorporating the term

_____

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

-7-

"Village," in the singular or plural; 34 trademark registrations disclaiming the word "Village" as a descriptive term; 19 trademark registrations claiming a date of first use prior to the date of first use claimed by Plaintiff; 17 trademark registrations beginning with the term "The Village" or "Village," in the singular or plural, followed by the name of a place, such as, *inter alia*, "Villages of Irvine," "Village of Providence," and "The Village of Westclay;" one trademark registration for the mark "The Village;" one trademark registration for the mark "Village;" 1,165 companies registered in Florida using the word "Village," in the singular or plural, in their business names).)[7] Moreover, a residential development neighboring Plaintiff, named "Villages of Parkwood," has used the term "Villages" in its name for at least five years, submits Defendant, and continues to do so with no apparent complaint from Plaintiff. (*Id.* at 14 (internal citation omitted) (noting that "Villages of Parkwood" advertises its development as being "Near the Heart of The Villages").)  Additionally, the United States Patent and Trademark Office ("USPTO"), in refusing one of Plaintiff's applications for trademark registration, noted that "[t]he term village, or its plural, is a common industry term which describes or names a residential community.  The term village is routinely disclaimed or registered under Section 2(f) in registrations for names containing such wording."  (*Id.* at 11 (internal citation omitted).)  Therefore, Plaintiff's mark is weak and can be afforded only a narrow range of protection.

    b.    *Similarity of the Marks*

---

[7] In the likelihood of confusion analysis, the Court considers all third party use, not just use in the same industry, to determine whether a mark is weak or strong. *See Union Nat'l Bank of Tex., Laredo v. Union Nat'l Bank of Tex., Austin*, 909 F.2d 839, 848 n.24 (5th Cir. 1990).

The similarity of the parties' marks "is determined by considering the overall impression created by [each party's] marks as a whole rather than simply comparing individual features of the marks." *Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1507 (11th Cir. 1985) (internal citation omitted). This consideration includes a comparison of the appearance, sound and meaning of the marks, as well as the manner in which the marks are used. *Id.*

The Court begins its examination of Plaintiff's and Defendant's marks by noting similarities between the marks. The Court notes first that both parties use a family of "Village(s)" marks. For example, Defendant uses "Village(s) of Lakeside Landings" and Plaintiff, in addition to "The Villages," uses "Village of Ashland and Lynnhaven." (*See* Doc. No. 4, p. 7.)

Turning to the overall impression created by the marks, the Court finds that the marks are distinctly different. Defendant does not use the mark "The Villages," and it uses the mark comprising of four words, "Village(s) of Lakeside Landings," which appears in a different font, color, and style from Plaintiff's, and in connection with a stylized image of a sailboat.

Moreover, Plaintiff's position before the USPTO when it was distinguishing other "Village(s)" formative marks from its mark "The Villages," Plaintiff argued that the other marks ("The Village at Bear Trap Dunes" and design, "The Villages of Taylor" and design, "The Village" and design, "The Villages at Turning Stone" and "The Villages at Turning Stone" and design, "contain very different words, and four out five include unique designs which set them apart from [Plaintiff's] [m]ark in sound, connotation, overall appearance, and accordingly, commercial impression." (Doc. No. 13, p. 16 (internal citation omitted).) Plaintiff cannot now claim that marks in substantially the same form are similar to its mark. The Court finds that the overall impressions of Plaintiff's mark "The Villages' " and Defendant's mark "Village(s) of Lakeside Landings' " are dissimilar and that this factor favors

Defendant. *See Freedom Sav. & Loan Ass'n*, 757 F.2d at 1183 (internal citation omitted) ("Since in this case the primary word was weakly protected to begin with, minor alterations could effectively negate any confusing similarity between the two.")

     c.    *Similarity of Services*

Plaintiff argues that the products or services which the parties offer are one and the same–residential real estate development and construction. (Doc. No. 4, p. 14.) There appears to be no opposition to this argument. (*See generally* Doc. No. 13.) Therefore, the Court finds that the parties' services are similar and decides this factor in favor of Plaintiff.

     d.    *Similarity of Retail Outlets and Identity of Customers*

Dissimilarities between the retail outlets for the parties' services reduce the possibility of confusion. *Freedom Sav. & Loan Ass'n*, 757 F.2d at 1184. Although Plaintiff summarily declares that both parties' customers are the same, the record is generally devoid of evidence as to how the parties operate other than general details of the parties' respective advertising campaigns.

With regard to the identity of customers, the record reveals that both parties' target customers, to some extent, are similar–retired individuals seeking to relocate to the area. While Plaintiff exclusively targets retirees, no evidence was presented to the effect that Defendant similarly limits its customer base. But, because Defendant's promotional brochures and other advertisements demonstrate that, at least in part, it targets retirees, to this extent, the similarity of customers is obvious. Additionally, there can be no dispute as to the fact that both parties' customers are sophisticated, rather than average, customers, and that buying real estate is no knee-jerk purchase. (*See* Doc. No. 13, p. 18 (noting that "Plaintiff additionally argued [to the USPTO] against a likelihood of confusion because 'the sophisticated purpose of the [Plaintiff's] real estate and related

entertainment services is evidence that the services are not likely to be casually purchased' ").)
Because the parties' consumers are sophisticated, there may be a reduced likelihood that Defendant's
mark adds confusion to the marketplace.  *See Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A.,
Inc.*, 702 F. Supp. 1031, 1039 (S.D.N.Y. 1998), *rev'd on other grounds*, 875 F.2d 1026 (1989).

      e.     *Similarity of Advertising Media*

      The greater the similarity in advertising campaigns, the greater the likelihood of confusion.
*See Ross Bicyclers, Inc.*, 765 F.2d at 1508.  Both parties use similar advertising media: newspapers,
internet, printed brochures, and website hosting.  However, the record does not clearly reveal the
extent to which the parties' advertising campaigns overlap.  Be that as it may, the record at least
reveals that Defendant at some point advertised in one of Plaintiff's publications.  (Doc. No. 1, Ex.
E.)  The Court finds that this factor leans toward a likelihood of confusion and weighs in favor of
Plaintiff.

      f.     *Defendant's Intent*

      Plaintiff argues that "Defendant's intent is clearly to benefit from the reputation and goodwill
associated with Plaintiff's mark."  (Doc. No. 20, p. 14.)  Furthermore, Plaintiff asserts that "[t]he
similarity of the parties' marks, the similarity of their use/service associated with the marks, and
Defendant's close geographic location all point to Defendant's bad faith intent to piggy-back off of
the Plaintiff's valuable reputation and goodwill." (*Id.*) Finally, argues Plaintiff, "Defendant's history
of infringing use is clear evidence of Defendant's willful and wanton disregard of Plaintiff's exclusive
rights to Plaintiff's registered and incontestable mark."  (Doc. No. 4, p. 14.)

      Defendant, on the other hand, has demonstrated that it acted in good faith throughout its
dealings with Plaintiff.  "For example, in 2005, after Plaintiff complained about Defendant's use of

the term 'Lakeside Landings at The Villages,' Defendant stopped using that term, even though it

believed it had a legal right to use the term, based in part on the numerous third-party commercial uses

of the [terms] 'village' or 'villages' in their marks." (Doc. No. 13, p. 18.) Later, Defendant changed

the name from "Villages of Lakeside Landings" to "Village of Lakeside Landings" to avoid costly

litigation. (*Id*. at 18-19.) Defendant submits that its conduct demonstrates that it "took great care to

avoid any trademark conflict" and that it "should not be penalized for its conciliatory efforts." (*Id*.

at 19.)

The Court agrees with Defendant. Plaintiff failed to introduce evidence that Defendant

intended to infringe on Plaintiff's mark or to benefit from Plaintiff's mark's reputation and goodwill.

g.      *Evidence of Actual Confusion*

Evidence of actual confusion is not required to establish a finding of likelihood of confusion.

*Western Union Holdings, Inc. v. Eastern Union, Inc.*, 316 F. App'x. 850, 853 (11th Cir. 2010).

However, actual confusion, if any, is the best evidence of likelihood of confusion. *Caliber Auto.*

*Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 936 (11th Cir. 2010). "Short-

lived confusion or confusion of individuals casually acquainted with a business is worthy of little

weight, while confusion of actual customers of a business is worthy of substantial weight." *Safeway*

*Stores, Inc. v. Safeway Disc. Drugs, Inc.*, 675 F.2d 1160, 1167 (11th Cir. 1982) (citations omitted).

With its Reply, Plaintiff filed an Affidavit of Dillon Burns, who is attesting to actually being

confused as to the source of ownership of "Village(s) of Lakeside Landings." (Doc. No. 16.) Mr.

Burns is a Sumter County resident and a former resident of "Lakeside Landings." (*Id.* at 3-4.) Mr.

Burns drove past the entrance to the Defendant's property and noticed the sign bearing the name

"Villages of Lakeside Landings." (*Id.* at 4.) Upon reading this, Mr. Burns assumed that Plaintiff had

-12-

purchased Defendant's development. (*Id.*) "It wasn't until approximately one week after witnessing Defendant's "Villages of Lakeside Landings" sign that [he] contacted counsel for the Plaintiff who[] clarified [his] confusion." (*Id.* at 5.)

The Court does not give this evidence of actual confusion much, if any, weight. Not only is it self-serving, but Mr. Burns is not even a "customer" nor a "potential buyer" of Plaintiff's services. The record in its present posture is devoid of any actual <u>customer</u> confusion.

4.     *Summary of Likelihood of Confusion Factors*

Evaluating the overall balance of the seven factors discussed above, Plaintiff has failed to meet its burden of showing there exists a likelihood of confusion on this record. Two factors on this record, the similarity of services as to the real estate development and construction and the similarity in advertising media support a finding that there is a likelihood of confusion. The factors that do not weigh in favor of this finding are: the mark is weak; Plaintiff has not established a similarity between "The Villages" and Defendant's mark; the record is unclear as to the similarity of retail outlets and both parties' customers are sophisticated; the evidence before the Court does not suggest that Defendant intended to appropriate Plaintiff's reputation; and, Plaintiff's evidence of actual confusion is self-serving and of low probative value.[8]

**CONCLUSION**

_____

[8] Because the Court found that Plaintiff failed to establish the first element–the substantial likelihood of success on the merits–the Court need not analyze the remaining three elements: whether Plaintiff sufficiently showed that it would suffer irreparable harm should preliminary injunction not issue; whether the threatened injury to the Plaintiff outweighs whatever damage a temporary injunction may cause Defendant; and, whether an issuance of a temporary injunction against Defendant would be adverse to the public interest. However, the Court notes that it considered the parties' arguments as to all three elements, and it is not satisfied that Plaintiff's conclusory arguments meet the necessary burden.

Based on the foregoing, the Court finds that Plaintiff has failed to show a substantial likelihood of success on the merits of its trademark infringement claim. Therefore, Plaintiff's Motion for Preliminary Injunction (Doc. No. 4), filed on November 22, 2011, is **DENIED**. Additionally, Defendant's Motion to Strike Affidavits (Doc. No. 24), filed on December 15, 2011, is **DENIED**. Pursuant to the Court Order Setting Hearing (Doc. No. 8), dated November 28, 2011, the Affidavits were properly submitted.

**DONE** and **ORDERED** in Chambers, in Jacksonville, Florida on January 9 , 2012.

ROY B. DALTON JR.
United States District Judge

Copies furnished to:

Counsel of Record